Due to our earlier technical difficulties that prevented us from having a full panel uninterrupted here in your case, we're going to essentially start over and Mr. Cohen, you will have what additional time you guys will just be on our time as we go forward if you would like to take it for additional argument. But let's make sure that we've had we have all all of us fully on board from the outset and we'll start running time now. Patrick. Thank you. All right, Mr. Thank you, your honor. If I may, I would like to pick up where your honor left. I think I do still have the question in mind. To the extent we're disagreeing, I don't think it is about the Montana State Court decision, but perhaps about what counts as derivative under this court's 2018 decision. I think that this court's decision is best read to contemplate that there are some actions that are going to fall that could be characterized under state law is being direct, but for purposes of 524 G are nonetheless derivative. And the court's citation of gas and dots really confirms that. And what's significant, I think, about gas is that it's actually not a respondent superior case or an instance of vicarious liability is your honor was referencing earlier. The provisions that were cited under the second restatement for 10 and 14 are instances of direct liability and 414, for example, is The heading of it is negligence and exercising control retained by the employer. So the, the nature of the tort there is that it is an action against the employer because it has retained Control and it's an action about negligence against that employer. Nonetheless, the court put it in the box of being derivative because it's an instance in which and certainly was the fact pattern in gas itself. Where the harm that was created was by the contractor was by the conduct of a third party. So we think what we have here fits squarely within that context. It's true. It's not like responding superior. It's not like vicarious liability because they're bringing Tort against us based in part on our conduct, rather than an instance in which we're blameless, but we don't think that that's what this court recognizes being the test for derivative liability. We certainly put some bounds around it, but we did it on both sides. Right. And you can have direct and derivative Liability, you know, at the same time. And that's what those cases point up. But, you know, on the other hand, we also talked about following the model of Quigley where notwithstanding a You know, a parent and sub relationship. We, we took it as a Claim that didn't Invoke The Was wasn't based on the relationship, but only on the actual use of the name and logo. And You know, here. We have to decide which of those those molds were in go going back to, you know, to the extent the judge point is We Been Able to hear the question earlier. I want to just return to the parameters of what we're talking about. And that's the concern that we're talking here about an independent Duty and that the Montana Supreme Court in Maryland casualty had Explicitly distinguished the liability from harm directly caused by a first parties tortious conduct from the liability for harm that's directly caused by the tortuous conduct of a third party that's beyond the first role and it put Maryland casualty into the latter category. If we are looking at the 324 a of the restatement with regard to, you know, your client as well. Why isn't it also in that latter category. But I do want to respond to the reference to quickly and understanding what the parameters. This court said Second Circus decision quickly quickly actually doesn't decide the question of whether the claim for an apparent manufacturer theory is derivative or not. It specifically Reserve that question and address the separate issue of whether it's arise by reason of the relationship and I'm happy to talk about that issue, but I don't think it actually is instructive On derivative ability, except to the extent that the court and footnote seven was citing quickly for the point we look to state law is route is being relevant to inform what counts is derivative Liability ability to interpret the court absolutely did said benchmarks on both sides in terms of what could count as derivative and what couldn't The one that it gave was the following ceiling tile example. And I think that example is instructive because it's an instance in which the Defendants alleged liability alleged duty is totally disconnected from the debtor and it's it's noteworthy that that the nature of that theory, the nature of that duty would be basically a premises. Liability theory that you are an owner of a premises. So you're responsible for things that happen on it. The Montana court input note 20 of the decision specifically address that line of case law is an example that is not like the 324 a action because it's an instance in which Defendant is being held responsible for its own action harm that it's itself potentially create And it distinguished that case is being quite different from 324 a which is noted was a more limited theory of liability, where you're being held potentially responsible for the conduct of another party of a third party, which is here is grace. If what we're talking about here is as alleged Your client and Undertaking to perform a duty. Beyond that, that simply incidental to the provision of insurance, but undertaking to perform, you know, a duty that otherwise would have been owed by by grace. What, why isn't it A Separate freestanding Independent basis of liability. I don't think it is separate. Again, it is that we are being we are an additional torque user that is the allegation that was not disputed in the first Appeal with the plaintiff's primary argument that look, this is a torque plane, you're being we're trying to hold you liable for your own conduct, not for the conduct of someone else. Therefore, we win this by its nature cannot be derivative and the court rejected that. And I think it's telling that the plaintiffs on remand and they're briefing here have not identified anything That could could satisfy any torque claim against an insurer that could conceivably satisfy their, their understanding of the test when you have Needing derivative liability and by reason of the elements of the claim. It's essentially a null set. And I don't think that that's a that that's a sensible result in terms of how to read the 2018 decision. Don't we need to look now at at 324 a and and going through it and the three predicates determine whether You know, any or all of them involved derivative liability. We agree that you're supposed to look to the nature of the state claim that the 2018 decision clearly provides that Those three prongs are additional factors that's not they're not in the in and of themselves independently sufficient to establish liability. Under 324 a you have to first have to demonstrate that there is an undertaking and that there was there was a reason to think that there was a serious risk that needs to be addressed our, our point in our submission is that Under the circumstances of this case, the, the reason for our duty. The reason for that arising. Completely dependent on what grace dead and its tourist activities. If it had not been engaged in dangerous operations there, there would not have been a risk for us that we had a potential obligation to undertake to address. So we think that that Sorry, sorry. I you're on a streak. I'm sorry for interrupting. But what you said, what we said prompted a thought of Maybe it was Judge cross this question, coupled with your response, but at one level with the prior panel. This court did was it remanded And the reason that remanded was based on the, the understanding the answer to this question depended on a choice of why issue, which is really Push to the side. Well, we all get that there's no dispute there, but then it depended on what the state law was And so I guess in my head. I'm thinking to myself under your theory. What would the power panel wouldn't have remanded if there wasn't a way under a conception of state law for plaintiffs to win. And a way under state law for you to win. They would have just said, oh, state laws immaterial. Anyway, you decide state law the channeling injunction channels or any way you decided it doesn't change. And so I guess what what I'm wondering is now we get a ruling from the Montana Supreme Court that says, oh yes. In fact, we've decided state law in a way that doesn't channel through the injunction. What Just so that we don't render the prior panel decision and all set when we resolve this what version what resolution could the Montana Supreme Court have reached that would have meant that CNA was outside the scope of what the bankruptcy code permits to be in a channeling injunction. What is your honor knows from the record. There was a dispute in during the remand about what the nature of the state law cause of action. Would be we were arguing that it should be decided under 324 a that that was the exclusive means of holding an insurer liable in this context, whereas the plaintiff's primary submission, which they adopted for the first time after the courts. Remand was was that no actually there's this freestanding duty it under Montana law that if you are in the best position to identify a hazard, you have a risk. You have a duty to warn against a perceivable risk or as a provider of professional services, you have your own duty to engage not engage in those services non negligently. You won't be surprised to learn that the parties are each arguing that they should win under both Conceptions, but I don't think it's a coincidence that we were arguing that 324 for a and the plaintiffs for the other side. If it were at the theory. Were divorced from any undertaking to grace did not depend on grace creating a risk, but was just look, we don't care about the relationship between you and grace. You, but you happen to be in a position and it was foreseeable that there was this risk or you were providing services and you have an obligation, much like a landlord, you have an obligation as a professional provider professional services. So you have that duty. It's a different. It's a different inquiry and we would have had a tougher argument. But, but, but I think my thought there is At one level, I totally get how that would affect the statutory relationship requirement because if if if race wasn't the insurer, but was just some Occupational safety entity that came in and said, oh, we noticed there's a lot of dust and other other products in the air. Well, you that occupational safety entity might still Incur 324 liability got no shot, at least as I read the statutory relationship requirement of falling under that. So they couldn't be part of the channeling injunction. But, but they could be part of the derivative liability part or non part. And so I guess my question is, this remand though wasn't under the statutory relationship part So what sort of outcome could the Montana Supreme Court have reached that would have because we want to remand it if that wasn't possible. Could they have reached that would have said that would have foreclosed grace from claiming derivative, you know, the derivative liability promise met. To be clear, the court did remand on both issues as to the liability and statutory relationship. And of course, we need to show both in order to prevail. So, you know, to the extent the court had doubt on statutory relationship that could in and of itself describe the reason for But it's reason but but I mean like like great point it but it remanded on the other one, too. So that means the first one had to make a difference. And so I guess what I'm saying is, what is the way that the Montana Supreme Court could have resolved that first question that would have made it. I know, I know you knew that's what I'm saying. Sorry for No, no, I understand. As I said, I do think there is a conceivable difference between 324 and the other actions. We also do think It would be possible to imagine claims against an insurer that would probably qualify is non derivative, for example, a claim based on the insurers Bad faith in the processing of of the claim and such an action was at issue against MCC MCC prevailed on that in in the lower court, but there were, it was You know, I think we again we would have argued the same. Either way, probably won't surprise you to learn, but I do think our arguments would be Harder if they had not adopted the 324 a framework if they they had Acknowledged a potential bad faith claim which would have been based on our status as an insurer, but not connected to race creating creating a harm or risk and Conversely, I don't think there is any thing that's good status that could have come through under the plaintiffs understanding If you think that it is an element of it has to be an element of the claim that both you are being held liable for the debtor and you That you're providing insurance is also an element. I don't like we are not aware of any Mr cone pre has not previously identified anything That would qualify that within the scope of the channeling injunction aside from the direct actions for insurance proceeds and I think it's clear in their brief that In how they address the remand that they refer to the courts reasoning is making interesting observations, but things that are not relevant to the claims they are bringing And the district court again had run sorry the bankruptcy court to in reaching the result that did it. Quietly rejected several aspects of the court's reasoning, including a key part of its statutory interpretation, which would say that These actions are not going to be limited by their nature to direct actions for insurance proceeds. She said exactly the opposite of that, I think, because otherwise it is hard to understand what the need for remand under their theory of the case. Because I mean it does seem like I mean it does seem like if 324 does not Qualify is derivative, then populating what would qualify as derivative beyond a direct action for insurance proceeds is a tough set to populate That is, that is certainly our position. And when you also taken the second prong that it has to be something that is going to arise by reason of insurance. We think it's an old set under other than an indemnification claim seeking insurance proceeds and One of our themes throughout grace one was that what we're looking for in terms of derivative liability is liability that is predicated on these liability of the debtor. Right. And so it's not just that there's a product or conduct. It's on the wrongdoing. It's on the liability. And, you know, that that's where the concepts of legal relevance. Also, you can come into play and but that doesn't mean when we look back to 324 and that there are there are ways you for, for example, under Sub sub one in terms of I, you know, enhancing the risk. Increasing the risk of harm. Well, that necessarily builds on liability with with you know the risk to begin with. And so there might be an argument that it's derivative, whereas undertaking to perform your very own duty taking that on when it was, you know, otherwise would have been owed by by third party. You know, would not seem to be so dependent on liability of that third party. In other words, even looking at 324 it seems and accepting that there, you know, there, there, there need to be ways to Acknowledge Derivative liability and in certain certain certain aspects, whereas a separate duty and others that seems to be also built into 324 itself. If we're going to look through each of these three prongs and think about it in those terms. I don't think I disagree with how your honors reading 324 a except I will reiterate that the three prongs only come into play. Once you establish the threshold conditions which is that not only is there an undertaking, but there's a risk in the relevant facts here is that grace created I can't be and we rejected in grace one. The idea that any risk right at, you know, Any risk is going to bring You bring bring the case within the offices of of derivative liability. It we we And that's takes you very close to the, you know, to the title. Right. I mean, there's certain risks involved. Although here we're not really talking about a defective product. Right. We're talking about a You know, an operation that had to be maintained within certain parameters and to remain compliant and safe, or at least far safer for those who are working in that environment. And so the monitoring the engineering that you know the industrial hygiene. I seem like they take on independent importance. Whoever is taking on that that duty. I agree that You know, the duty is significant. But what the court held in the first case, at least as I understand it, in terms of what rejected With a theory that a pure factual connection that just the debtors asbestos being the instrument of the injury is sufficient to make the claim to the court said no, that's, that's not enough. But what we have here is different in 324 a because the creation of the risk is not just an incidental fact that has nothing to do with The theory of duty, as would be the case when you're holding a landlord liable just for the under premises liability theory. But you're under 324 a the creation of the risk and understanding the need to abate it is part of the claim. I do want to respond to your honor's point about The courts focus on liability and graces liability. It does say that it one instance, but there are several other instances. In the opinion of the court refers more broadly to graces liability or wrongdoing graces liability. For conduct. We think it can't be limited solely to liability, among other reasons that would create a problem where you have Something that are that clearly it's conduct is responsible for action, but it's it's immune. For some reason, which was the circumstance and gas and is arguably Analogous what you have in bankruptcy where grace itself can't be held liable as a result of the channeling junction. So it has to extend beyond Liability in that respect. We think the statutory language and referring to conduct provides a pretty good hint that it needs to extend More broadly than that. And the court was interpreting that language and in response in addressing The, the broader structural features of the statute and the incentives that are created the court recognize the importance Of providing closure to insurers and who are looking to settle. And if you have an instance in which some insurers can be held indirectly responsible for conduct of another party. Even if you have your, you're saying, well, you, you have you had a duty to ameliorate that that harm that they created or you undertook a duty to warn people about it. That we the court, we think, recognized and understanding what the scope of the incentive was and the need to get closure to insurers that that kind of pleading around really creates a problem. And it's not And it was limited. Well, wouldn't, wouldn't, wouldn't that uncertainty lead insurers to ask for a partial refund of any amount that they contribute to a trust to say, hey, look, we know that we're good for direct You know, we know that once we pay into a trust were insulated by the channeling injunction for direct actions for insurance proceeds. We don't know where we stand with respect to some of these other 324 and other type claims freestanding state law claims, whatever they are. So what we'll do is we'll contribute X dollars. We know that with the X dollars we're buying ourselves a nice direct action. Insulation, but we want to refund if we ever get sued for anything else because we're taking a risk and we're kind of allocating the risk and if someone pioneers a new claim under 324 or freestanding state law claim what we want out of the trust for them. And so it seems that there's a way built in that the market can kind of head where you can say, look, it's still worth it to us to pay in to a trust to a certain amount because we get an injunction for a direct Direct action and we'll take will on a risk assessment will buy a little more for these other claims, but maybe we'll get something back. So to your point, it seems that exactly what CNA did is consistent with uncertainty. That would lead to a strange incentive system, but it can be accounted for by sophisticated players. I think that's quite right in the absence of precedent, which was way CNA was proceeding at the time. As your honor noted, we did in fact. Include an indemnification provision because we thought these types of claims ought to be covered by the channeling injunction, but we were aware that they were Out there and there was not clear precedent determining whether they were going to be something that had to be channeled to the trust or could be brought against the insurer. But once you have a decision from this court. Saying that no is in fact these types of claims cannot be channeled. I'm not sure that that kind of arrangement will work to the extent it It does, it's going to be exorbitantly expensive to the trust because the insurer knows that it's going to be on the hook for these potential claims and It's not a coincidence that the trust is an amicus in in this case. Arguing that adopting the rule of the bankruptcy court and at the Montana plaintiffs are going to be advocating is going to be really detrimental to the way these trusts are formed and funded If insurers don't have an incentive to settle or if they do settle, but with Significant potential paybacks from the trust that's coming out of the pocket of other claimants and the way this system is supposed to be structured is you want to channel as many claims as you can that are That are really encompassed within being rising from the debtors wrongdoing its bestest conduct and the best injuries. You want them all going to the same trust that you get horizontal equity among claimants, rather than particular claimants being able to go outside of that system and seek higher recovery and trust that is going to come away from other other people that are What would it would it Know, go ahead. We do where you're dealing with the liability of the debtor and and you know the In third parties where it's their liability is either direct and indirect liability as we're addressing today. But if you have a third party that has taken on their duties that are freestanding duties. I what why should those be channeled with the more limited returns that when you provide it in a trust and if there if there is proven to be. And in fact, an undertaking aware I it is not a matter of I if your client. You know, being. It's not, it's not a controlled Under the control of someone else, but in fact is has taken over duties that were otherwise owed and why shouldn't there be direct liability there for that independent duty. How does that actually I mean 524 D trust is for the liability of the debtor. If it doesn't relate to the liability of the debtor. Because there's liability for breach of a of a different duty. Why, why, as a policy matter, why would it make sense to even go into the trust. To response to that, Judge Krause. First, I think respectfully that that starts with very much like an insurance proceeds limitation that your argument is that the only thing that is Belongs to the estate that is that we are trying to channel are the claims for to seek recovery under the insurance policies and the insurance proceeds. That's exactly what the court. Rejected in 2018 in terms of the broader incentives and why you would want to do this as we've explained as the casualty. Trade Association explained in its amicus brief. These are routine insurance services to provide inspections and loss related recommendations and matter of fact, Montana law. Posted these policies, but now requires insurers to engage in risk management practices and make recommendations. So these are just things that insurers to Another the issue. I mean, if it really, if it really is risk assessments that are just incidental to insurance. That that doesn't seem like it would qualify under five under 324 a No, that's quite right. And that's why we should win in state court if it goes there, but we don't think that that is the relevant question for whether the channeling injunction. Should apply and your honor asked about the incentives created it routinely because these are things that insurers do It's just part of providing insurance that they do this. It means that in every instance. Even when you try to settle your liabilities under the for the insurance proceeds under the policies, you're going to face a potential to work. Now, maybe sometimes those torque claims will succeed. Maybe they won't, you know, you can have arguments about the scope of it, but that's going to be expensive to do in state court. Proceeding under the vagaries of state law and we To have it be routinely that you're going to have that kind of a second bite at the apple, even though the insurer has tried to settle we think creates an enormous Disincentive to insurers entering the settlements in the first place, certainly without significant back end indemnification is judged that's indicated and that operates to the detriment of the trust as a whole, and to the whole class of claimants aside Validations of complaints. I mean, why, why, why wouldn't you just, you know, assess what is alleged if it's alleged in the complaint is something far beyond the, you know, incidental Is risk assessment that is maybe part and parcel of the provision of insurance. And then It could go forward if it's not if that's all that's alleged, then it would, it would fit within your the channeling junction But I haven't understood the other side to concede even that I think their view is that maybe you would lose Under Montana law, but it still would not fit within the channeling junction and just fundamentally I don't think this inquiry about Whether you have a viable duty under state law because it's only the kind of things that insurance routinely do or maybe this insurer did a little bit more than another one because As in the MCC case that the claim that they actually found a duty on was based on engaging in medical monitoring practices, which is not something that is developed at all in the complaint against us. You know, to the extent that's relevant, but we don't think that the inquiry is supposed to be. Is there a viable state law claim or is there not a viable state law claim 524 G is supposed to protect us against both to the extent we are being held potentially liable for risks that the debtor created that are directly relevant to our duty under state law and then follow directly from our provision of insurance to that debtor. Let me just ask you a hypothetical. This is one off and this may not be helpful. So if it's not helpful. Don't spend too much time. But what if CNA in sending its air quality inspectors and its ambient environmental inspectors out, it sent them out a lot, like a ton. And then they developed asbestosis as a result of exposure to the living plant. And that now they want to sue and they want to sue CNA that they might bring completely different claims. It might not be a 524 claim. It might be responding. I might be an employer liability claim. It might be all these other things. Would that get channel I think probably not. I mean, among other reasons were pure workers compensation claims and this was addressed in the first appeal or not subject to the channeling injunction and the reason that These claims, nonetheless, were held to fall within the scope of the policy subject to the question about the scope of 524 G. Is because the policies at issue with both workers compensation and employers liability and the relevant Rights that we had under the policy to engage in inspections and make loss control recommendations were applicable to all So pure workers compensation claims, whether it's by people working at the mine and mill and Libby or Or CNA employees do not get sent a channeling injunction, you can bring those standalone workers compensation claims, but this addresses is trying to hold us liable in tort for damages that were caused by specifically the asbestos released by Grayson it's operations. Do you want to address DODs and GASs? Which you touched on earlier, but I want to make sure we're all Sure. Hear your argument. Yeah, I'm pleased to. I think the reason those cases are significant because they were identified by the court examples derivative liability. Where the defendant is alleged to have engaged in some of its own wrongdoing and it's beyond that. It's also significant that the claims that issued there and this is Very clear in GAS with the restating 410 and 414 provisions. Those were not instances of vicarious liability or respondeat superior. So Whatever this court meant by derivative liability had to mean more than just pure instances of something held vicariously liable or respondeat superior theory. Those were instances and I read When we read going here, the provision of 414 the 414 is for negligence and exercising control retained by the employer against the employer. So that is an instance in which you're holding the employer. It's a direct tort against the employer. You're holding it liable for it's it's alleged wrongdoing, but the court characterizes is derivative, nonetheless, because Under the nature that were often and certainly under the facts of gas, the risk was being created by the independent contractor by another party. And so the fact that the court characterize those as derivative, we think is important. And, you know, they appeared at the end of the spring site. I can understand. The court having concern about how much weight to give them, but they were provided as examples of what it means to be something that is an instance. Of derivative liability, not withstanding the defendant's wrongdoing. And more than that, I think, to go to judge Fitz questions earlier, they help give content to what on earth the remand meant That it has to be something that is different from just pure vicarious liability just pure, you know, the, the Debtor is an element of the tort claim that the debtor is in fact liable because if you did that, then there would have been no need Reason to remand and Montana plaintiffs should have won the first time, but the court rejected that. And I think the fact that the that the court was Aware of what it means to be derivatively liable for purposes of this statute anyway is is instructive and it shows that it is more robust than the Montana plaintiffs suggest And so, so what you're saying there is basically in those cases. So, so, so typically there's one way of thinking of derivative liability as the rights that the wrongdoer would have Against, I guess, seeing it for the defendant in this this case. And in those cases, they expanded Was hinted that they're expanding derivative liability beyond the set of just those rights that the wrongdoer would have against The defendant and included different theories that were freestanding from rights from the wrongdoer against the defendant. I guess you're asking for an extrapolation of those or maybe not. Maybe just saying the fact that those are already mentioned suggests, or we should read That that contemplates a broader set of derivative liability than just a narrower set. Am I understanding that argument right or am I Over piece. No, I think, I think that's basically right with the caveat that those decisions themselves don't engage with the question of what Is derivative or not derivative, but they are dealing with instances of liability that are characterized under the restatement is being direct They're, they're clearly examples in which the defendant itself is being held liable in part for its own wrongdoing. And yet the court identified those as examples of derivative liability referring in the parenthetical with respect to gas specifically to 410 and 414 So I just don't know what that citation the parenthetical was doing, except as an example of something that could be that is characterized as derivative liability, notwithstanding not being vicarious notwithstanding The defendant having its own duty that it could have potentially acted wrongfully. Isn't the difference that there's a degree of control and that's that's built into the liability under 410 and 414 right The employer has retained some control. Right, and the claim is being brought against the employer. You know that the allegation here is that CNA has some control and the claim is being brought against us. My point is that that is not preclusive of treating the claim. As derivative when when the action is when the risk is being created by another party. I think it's like a perfect analogy on all horses. We 24 day, but I think it shows that it is The allegation. The allegation is is not that CNA has control over grace. Right, no, the allegations, not that CNA has control over grace. The allegation is, but I think it's similar in the sense that the allegation in the 414 census that The normal default rule for independent contractor liability is that the employer doesn't have any liability with respect to things independent contractor does And then there are various exceptions to that that would be versions of various liability, but for tenant for 14 are examples of exception where the employer itself has done something Gratuitously, you know, it didn't have to retain any control and nonetheless it did and is being potentially held liable on account of that. I think the analogy to Context is the claim is, you know, CNA is not generally liable for the wrongdoing of a third party. But the under a 324 a theory. The argument is that it it for compensation or gratuitously undertook this this duty and so it took on its own duty, but But same reason that for 14 should be treated as derivative under there where the risk in the nature of the duties is tied up in another party. So, so to in the 324 a I guess I'm not understanding where the control element comes comes into play. Here. I mean, I think the point I'm trying to make. I don't know that's about control specifically is that it is an instance in which The taking on in your own sort of independent duty. The court treated is not being preclusive of it qualifying as a derivative Claim that we are like we are like the employer in that respect that normally you would have no liability for things that another party does But because the employer had control over the old sub control over the ultimate work product. It could take to be held liable on for for its own negligence and yet the court said that that was terrific. So, here, then we look to 324 a to determine You know, for a third party that wouldn't otherwise have liability. I you've done does it meet these criteria and how to how to and then, you know, considering these, you know, with the backdrop of 524 And so, you know, looking to 324 a I mean I take it. Your argument is that just the the introductory paragraph, the fact of an undertaking. Because it's necessary that the protection of a third person. Presumes that someone else is causing harm. And so it's necessarily derivative and that that's the end of your analysis. The fact that it is part of the duty here that we took an undertaking to our insured and insured created the risk. And that is why we are potentially being held liable. Yes, that's the argument. We also think When you go through the prongs as your honor mentioned, at least with respect to the first one, several of them do clearly implicate Implicate grace, whether you were making the situation worse than grace did initially whether grace has delegated responsibility to you, whether grace has relied, but I do think our primary submission is that To even get to those prongs. The predicate is there is there has been a risk created and you have undertook to address it and that risk was created by the third party. And that was pretty broadly. I think it's not good. I don't think I'll sweep broadly to encompass all types of claims that are against the insurer, as I noted to judge that there are several that would not Conversely, again, the other side is not identified anything that could qualify as a tort. So I think that as between something but not everything and nothing. Our view has to be the better reading of the 2018 decision. The court has no other questions I can reserve to revolve All right, Mr. Thank you. Good afternoon, and please support. My name is Daniel cone and I represent the police were 27 individuals sick or dying of asbestos disease. Who we refer to as the Montana plaintiffs and his claims against DNA. We refer to as the Montana claims. In 2018 this court remanded to the bankruptcy court. To determine the state law required Montana claims and based on those requirements, whether the Montana claims can be enjoined under Section 524 g for the bankruptcy code. When we manned the bankruptcy court agreed with Montana plaintiffs that their claims cannot be enjoyed. But even more importantly, as this court is noted Last year, the Montana Supreme Court issued a definitive decision on the Montana law applicable to the Montana claims. And that Supreme Court decision effectively confirmed the judge channels correct in her ruling that CNN is liability. Is wholly separate from and does not depend on graces and therefore the Montana claims to not meet the derivative requirement that this court articulated in its So first I'll address the derivative requirement and then turn to the statutory relationship requirement, if I may, recalling that as as Mr Burgess acknowledged both requirements must be met. Montana claims to be enjoined So as it pertains to the derivative requirement, the Montana Supreme Court said two very important things. First, restatement section 324 a as interpreted in the Supreme Court supplies the standard for CNN liability under Montana law. And second, that under that standard CNN liability under Montana law is wholly separate from any conduct or liability of grace. And that's really the entire answer. Under this court's 2018 decision. Well, let me just Let me just let me just interrupt because the one level I get that both classes of action arise from a different duty. But when we say, should they be wholly separate aren't they both going to require proof of like common causation like exposure leading to asbestosis. If you don't prove that against grace, you aren't going to be able to You know, if you can't prove that you have to prove that against both causation has to be proven in both instances, I assume for damages purposes. And so if there's commonality in causation. Right exposure leads to asbestosis. How are they wholly separate Because, Your Honor, there is there is a huge amount of Overlap and what you would need to prove. I mean, these plaintiffs are sick. They're sick from asbestos. They're sick from graces asbestos and inherent in this course observation, not just observation, but ruling in 2018 That showing that graces asbestos caused the injury is not enough to make it derivative this court expected and acknowledged that there would be Overlap of proof that you just that you just questioned me about that just goes with the territory and and and that's true in the asbestos world, Your Honor, you no matter who the defendant is you need to prove that there was an injury from asbestos and that asbestos disease result. But, but, I mean, the example of the ceiling tile falling I get is wholly separate because that that's that would be entirely on You know, if it was seen a with it that operate the premises and the in the in the grace ceiling tile fell. I don't think you can hold grace responsible for that. That's completely separate zero Overlap wholly separate but here there's a, I mean, I just think there's substantial overlap in the sense that there's common causation common facts that have to be proven as Is that and so unless liability means just bottom line liability and that CNA is a liable in a way that Grace would never be liable and vice versa. Then that then maybe you get somewhere. But, but if we get to elements in facts and balancing elements and facts. I just, I just, I don't think that the difference in duty carries the day because there's other Parts of proof necessary for liability that these claims have in common. What do you think Well, what I think your honor is that the 2018 decision supplies the answer to this court has already ruled that it's a matter of what are the legal requirements that are necessary to hold CNA liable and if those requirements do not include that grace is liable. Then it's, it's not a derivative claim. Is there a scenario where grace would not be liable. And and CNA could be liable under 324 a Absolutely. If, if, as we noted in our brief and as as you noted in your question. This was just an industrial operation that like all industrial operations generates hazards that you need to remediate To industrial hygiene and if grace properly delegated the duty to to administer a safety program. To CNA and CNA failed in that duty, then it might well be that the CNA is liable and the grace is not there is nothing about section 328 324 a that refers to grace is liability. Could also have been your honor. Race. It could also have been that there was an earthquake and a bunch of asbestos dust got stirred up and that's what needed to be remediated. And that's the undertaking that CNA may could be that John's man, you know, was responsible for the asbestos. None of that matters for purposes of section 324 a 324 a focuses entirely on the undertaking on the undertaking of CNA in relation to a hazard. However, it can Could you say that again in relation to In relation to a hazard. Oh, has it Something that creates a danger to a To a third party in this case our, our clients. What about the 924 G language of being directly or indirectly liable for the conduct of the debtor. Yes. You know, Mr. Bridges actually gave the answer to that. But let me amplify. So as a matter of statutory construction, right, the words conduct and liability. Have to cover two separate topics because if conduct was simply a broader term encompassing liability or for that matter of liability or a broader term encompassing conduct and there would have been no reason for Congress to use the two separate terms. Mr. Burgess raised the example of let's suppose the debtor is immune for some reason. Let's say it's the town of Libby. Which actually put this is true. You're on. This is not a hypothetical kind of Libby actually put the asbestos trailings from racist operations on the track because it happens. It has nice and bouncy and and the track stars would run over this and But, but let's say the town of Libby is exempt under Montana law as most municipalities would be from from liability. Yet it's conduct in putting those trailings on the asbestos track and then the Running track at the high school. That would be liability generating conduct, it would be conduct that but for exemption would be with the Would generate liability. So that's, we think the meaning. That's why why Congress needed to use the word conduct as well as the term liability. But, but it doesn't just stop at conduct. It says conduct claims against or demands on so it seems to suggest that That it would be that liability. I guess what you're saying is if liability has to be distinct from conduct. It would also have to be distinct from claims against and demands on and that's a lot harder to say that I'm liable, but it's distinct from the claims against me or it's distinct from the demands against. So if it's distinct from conduct. It would also if you give this just normal principles of statutory construction have to be distinct from the latter two and that's a much harder sell, isn't it. No, Your Honor. First of all, demands is just a technical term that the 524 uses to mean future claims claims claims of asbestos injury that haven't yet been asserted So we can really put demands to website because it has its own technical meeting under the statute, but it's a fair question to ask. Okay, then. You know what's why, why does liability have to be there as a separate as a separate term. And again, we think that the reason for that is because Liability picks up vicarious liability situations in which there was not in which conduct was not necessarily relevant. For example, I mean, as, as, as Judge Krause earlier observed, this is not a products case, but But there, but certainly a lot of the claims against grace. In fact, hundreds of thousands of claims against grace. Were products claims and a products claim. If you put an inherently dangerous product out in the marketplace. It doesn't, your conduct doesn't matter. It doesn't matter whether you Were careful or not careful or whatever. You're just vicarious reliable for the for the consequences of that. So that's the reason we think why why both liability and conduct. Were necessary for the statute. But the important point for this purpose is that conduct means liability generating conduct. It doesn't just mean It doesn't just mean, you know, conduct in any kind of abstract abstract sense that grace, you know, happened to be there, but it happens to be a facility and so on and so forth. So if you now look under 324A and you ask, what is it that CNA is being held liable for? It is not grace's liability, certainly. And it's not grace's liability generating conduct. It is, it is that there is a hazard which arose for by whatever reason, whether with or without any fault by anybody. And grace and grace does not is not an element of that. It's that it's the CNA engaged with a hazard that that was there. It undertook, it made an undertaking To address that hazard and then it failed to do so, thus injuring our clients. So, Asking us when we look at 524 Sorry, it's at 324A Are you suggesting that You would prevail under A, B, and C? Or do you agree, at least on A, that there is The building of liability on liability that that at least A would be derivative. I'm sorry, by A you're talking about the awards his failure to exercise reasonable care increases the risk of such harm. Yes. Well, no, Your Honor, because the important point is that when I say no to is no, that would not proceeding under A would not render the claim derivative. And the reason for that is that 324A does not have to do with grace's liability or grace's conduct in relation to the risk. It is just a risk that could exist. Because, you know, God created, you know, vermiculite and asbestos in that mountain in Libby. It could be, it could be an earthquake. It could be some other company. Or it could be, or it could be grace, but it doesn't, that nowhere appears in 324A as an element of liability. In 324A what you need is A, risk and then undertaking, of course, by By CNA to control risk. So, The The importance of 324A is that it requires active conduct by CNA in order to generate liability. This is not a This is not the situation of Dodd and Gass, which I'll address in a moment, but this is a situation. This is a situation where the only way that you establish the undertaking that's required by 324A is by Is by affirmative conduct that indicates that you have Commenced an undertaking. And as it happens, the Montana Supreme Court did say that the normal activities of an insurer are not sufficient to constitute an undertaking under 324A. So the only cause of action that exists in Montana under 324A in this situation is the very situation that we have and the one that we allege, which is that there's active conduct and active undertaking by CNA To engage, to provide those industrial hygiene services and to protect Our clients from risk. Why isn't that, though, you know, opening Pandora's box, as Mr. Berges was cautioning, because once you say you can make that allegation, that's enough to proceed in state court. The, you know, the Exposure in terms of liability around the country just to defend those suits, you know, could be quite significant. Yes, Your Honor. And that really goes to what is the statutory scheme trying to accomplish. And this court gave the answer to that in its 2018 decision. It said that it's to protect the insurers from Derivative liability, even though non derivative liability and defending against it and so on might be very expensive and not very pleasant for the insurer and could result in oodles of additional liability to the insurer. That's not the subject Of the bankruptcy statute and for constitutional reasons, it probably couldn't be. But, but, but, but nevermind that the statute is drafted. Only ties it very closely to the interest of the bankruptcy estate in settling its insurance policies. So the idea of that injunction is to protect an insurer. From any further liability under its insurance policies once it settles with the bankruptcy estate. So if an insurer has $100 million of liability under an insurance policy and has another $50 million of liability on top of that for its own Non derivative misconduct. It's still to the advantage of that insurance company to settle with the bankruptcy estate. For $100 million or for some compromise figure or whatever. And that benefits both the bankruptcy estate and the insurer by avoiding any further litigation and liability on that subject. But, and the fact that the bankruptcy estate can't, in the bankruptcy law, can't solve the insurers problem of its own non derivative liability. Doesn't, doesn't, doesn't prevent the insurer from being very well motivated to settle with the bankruptcy estate. And indeed, if you look at asbestos cases. In fact, if you look at this asbestos case, you have almost all the insurers lining up to make those settlements with the bankruptcy estate so that they can be free of their insurance related liability. And if they've gone and they've done something else. Mr. Burgess mentioned, you can have a bad faith claim arising under The very insurance policies at issue and he concedes that would be non derivative. Well, those claims can be fantastically expensive to defend. They're very They're very difficult for insurers. And, and yet, and yet that's not what the bankruptcy statute is trying to protect insurers from. It's trying to protect insurers from Liability under insurance policies and it does that, not because the Bankruptcy Code likes insurers or wants to provide them with any special advantage in life. The Bankruptcy Code does that because the bankruptcy policies are an asset of the bankruptcy estate, which the value of which needs to be maximized. By the ability to issue this kind of protective injunction. What's left then a derivative liability, in your view, outside of just an action for proceeds under the policy. Well, you know, that's a, that's a fair question, Your Honor, because in the real world situations are not likely to arise where that would invoke that footnote. I'll call it the Dodd-Gass footnote. Okay, so why did the 2018 panel include that? Well, you know, kudos to Judge Ambrose. He was thinking not just about About provision of insurance, but, you know, there are three other statutory relationships. That the derivative liability standard applies to. In other words, it has to be, you have to have both derivative liability and it has to arise by reason of one of the four statutory relationships. And those other statutory relationships are things like ownership of an interest in the debtor, engaging in a corporate restructuring with the debtor, involvement with management of the debtor, things like that. And you can easily see how Dodd-Gass and the other cases cited in that footnote, having to do with responding at Superior and piercing the corporate veil and all those other things could be tremendously relevant to a determination of what's derivative in that context. Now, Congress drafted the statute. So the same language, the same derivative standard applies for all four statutory relationships. And that does mean that if an insurer, for example, you know, put itself in the position of owning an interest in the debtor or engaging in a corporate restructuring with the debtor or whatever, that, you know, or for that matter, if it just exercised control over the debtor in the Dodd-Gass sense, then yeah, it would then meet the standards of the world that an insurer would do those kinds of things. Does it mean, does it mean that the derivative liability standard, it doesn't, it doesn't, I'm not reading that footnote out of the 2018 decision. I'm just explaining why it is that I think Judge Ambrose did a very careful job. But, but, but why did he need to be that careful if all he had to say was, Nope, these aren't direct claims for insurance proceeds. We're done. There's no reason to be that careful. There's no reason to remand if he's thinking at least under the third of the qualifying statutory relationships that it's really just a set of one. He didn't need to be, I mean, it's not, I mean, it's really, really nice to think about the other three. It's great. But at one level, there was no need for remand then, and there was no need for anything else, unless he was still contemplating in this context involving an insurer that there was something more. I mean, I doubt that panel would remand if the answer was for insurers, derivative liability only means direct proceeds. Um, well, Your Honor, the, the fact that, I mean, I've said in the real world, it's vanishingly unlikely, vanishingly unlikely that there would be any other kind of derivative liability for, for, for an insurer. But again, the statute is structured so that derivative liability definition applies to all four statutory relationships. And this Court will be very grateful, I think, to that 2018 panel if, when the next case comes along and it involves a different relationship, you know, it's one of, we're restructuring, you know, where derivative liability is an issue or it's a, it's a case of somebody managing the debtor or owning the debtor. This Court will be very grateful that Judge Edrow reserved those, those other definitions of derivative because, because those may well be very importantly applicable to that kind of situation. No, it's great in that scenario, but I still don't understand why there'd be a remand here. But, like, makes perfect sense to think ahead, to do all that stuff. And so the opinion can be written that exact same way. Getting to the end and say, oh, and we remand to determine on questions of state law, whether it's totally separate, you could just say, and we, you know, reverse or something else. So, so what he's contemplating or what that opinion is contemplating is, I agree, helpful, but it also is hard to gel that helpfulness as being the only purpose of those statements if there was no other situation other than direct proceeds from an insurer. Well, I think that the, when you look at the whole issue of Montana law and, of course, the judge, you know, first of all, whether, as you point out, there was a remand for choice of law issue, which apparently, if that had been in the record adequately from the Court's perspective, it would have, you know, it would have said Montana law applies, so go and determine Montana law. So determine choice of law, determine Montana law. And, and so apparently, and in this, you know, in this kind of instance, one has to defer to the judgment of that earlier panel, they didn't understand Montana law well enough to understand whether any of the statements necessarily would apply or would not apply. Well, okay, you know, I mean, look, there is, there's, it's just a recurring problem to match a federal standard with state law. Like it's just, it's just, it's just a recurring problem because they don't always fit together as neatly as Congress may like or state legislatures may like. They just, it's not always perfect. And so here we've got, and I think I read 324A the same way you do, in the sense that it's vague as to who caused the harm. It could be an act of God, as you say, it could be a debtor, it could be someone else. And so, so, but we then have to match that vaguery of state law where it doesn't say, that vagueness of state law, where it doesn't say who actually caused the harm that someone else has a duty to protect against with the text of 524G42, which focuses on conduct. And so it strikes me, and tell me why this dividing line doesn't work. If CNA sent inspectors to do workplace inspections and they detected seismic activity, and they said, that looks like there's going to be an earthquake, but they don't tell anyone. And then there's an earthquake, right? I think they have potential liability under 324A, but I don't think they have any shot in the world of getting into the channeling and junction. But if they come and they do the inspection and they say, oh, you know, there's dust in the air and it seems that Grace is causing this and this is, this is just that part of the Grace manufacturing process or how the plant operates, and they don't tell anyone. Why isn't the answer to that vagueness? Because the statute says conduct, that that relates to the conduct such that now they're eligible for the channeling and junction in a way that they wouldn't have been eligible had it been seismic activity. Well, Your Honor, first of all, we, as you've just acknowledged, 324A doesn't make any specific reference to who caused the conduct. Now that's your point. That's a good point. That's a great point. You made that point. And secondly, Your Honor, as I just discussed with Judge Krause, 324A doesn't even require that anybody, the Grace or anybody else, be at fault for the existence of the hazard. And so if you subtract out those two things, Your Honor, then what you are left with is Grace's conduct in generating asbestos dust. And, and, and because that's all, that's all that Grace did in a situation where we said could have been adequately controlled, but Grace generated the asbestos. And this Court, in its 2018 opinion, is crystal clear that the fact that it's Grace's asbestos is not sufficient. And furthermore, you don't look at the facts having to do with the Grace's asbestos. What you're looking at are the legal elements of liability under state law. That's the entire focus of the decision and that's why I then come back to 324A as interpreted by the Montana Supreme Court and say that the, that, that cause of action under 324A is entirely separate and independent, doesn't require Grace as an element of liability. And in case we have any doubt about that, the Montana Supreme Court said so. And, and so it places this case, perhaps almost uniquely in a situation where you now have a definitive reading of state law. You don't need to, there's no interpretation required. You've got the ruling of the state's highest court about what state law requires and it doesn't require Grace. We were also clear the first time around that nothing in the statute's text supports indirect insurer liability only where the claimant seeks to recover insurance proceeds. And we've rejected your attempt there to limit the meaning of the direct or indirect liability to a claim for insurance proceeds. Yes. It seems like you're taking us right back there. Well, no, no, I'm not, because I am acknowledging that if that if CNA actually satisfied the requirements of a Dodd-Gass kind of claim, if that, if those were the facts and they met, well, really, if that were the legal basis of our claims, if we were suing under some theory of respondeat superior or some theory that involved CNA controlling the debtor, then absolutely we would, we would, we would, we will lose. And we're certainly bound by that footnote. And that, that makes, that makes a great deal of difference from a conceptual viewpoint. I guess I'm just saying that those, those aren't, those aren't the claims that are asserted here. The claims that we're asserting against CNA have nothing to do with CNA controlling the debtor and being responsible for the debtor's actions. CNA is being held responsible for its own actions. And, and so, so those, so, so, so the footnote, well, conceptually it can apply, just doesn't apply to the causes of action that we're asserting here and the basis of liability under state law. If state law had said something like that, that you know, CNA can be liable only if it's an insurance company. I guess I'm leaping ahead to, to the, to the statutory relationship issue, but even back to derivative liability. If it said that CNA will be liable for claims against grace, even beyond its insurance policy liability, if it goes and conducts inspections, if that were the state law of Montana, then that would be a derivative claim. And so, upon remand, Judge Chan properly considered what were the elements of state law and great graces, the liability of grace or, or, or CNA being responsible for claims against grace simply isn't part of it. Why don't you turn to the statutory relationship issue? Sure. Shall we, shall we tackle that one now? And, and yes, and legal relevance in that relationship in this, in this context. Sure. So, so the 2018 decision says that to meet the statutory relationship requirement, the provision of insurance, of insurance would need to be legally relevant to the Montana claims. And that legal relevance standard, that's the term of art, comes from the Second Circuit's decision in Quigley. That was the case where Pfizer was the debtor's corporate parent and being the debtor's corporate parent is one of those four statutory relationships. Pfizer let the debtor, its subsidiary, use the Pfizer name on its asbestos products. We might all want to think about that as we go for our COVID vaccinations. But nevermind, that was years ago. So asbestos claims were asserted, not just against the debtor as the actual manufacturer of the asbestos, but against Pfizer as an apparent manufacturer, because it had let its name be used. The Second Circuit said no injunction under 524 G4 because the corporate parent relationship is not legally relevant to Pfizer's liability. The claim against Pfizer did not require the plaintiffs to prove the corporate relationship. And indeed, if Pfizer had had no relationship with the debtor, or for that matter, if Pfizer had been the debtor's insurer or director or investment banker, you know, other statutory relationships, the elements of the cause of actions would have been exactly the same. They did not include any of those statutory relationships. So all the parties agreed and the court acknowledged that as a factual matter, Pfizer would not have let the debtor use its name, but for the fact that it owned the debtor and was going to gain a financial advantage by having the debtor use the Pfizer brand. Just as it's undisputed here that CNA would not have gotten involved as a factual matter with industrial hiking at the Grace facility, but for providing insurance to Grace. The court drew a distinction between factual relevance and legal relevance and determined that legal relevance is the standard, not factual. Don't we, if we think the provision of insurance, you know, as Mr. Bergeson and the various amici have argued, it includes the kinds of risk assessments and recommendations that were made here, then it's more than just the fact of a relationship, that it is by virtue of those very insurance services, if you construe them that broadly. Right. Well, well, no. They recognize that the Second Circuit in Quigley faced really the same kind of situation. You had, I mean corporate, being a corporate parent is a legal relationship. That legal relationship was the cause of Pfizer letting letting Quigley use its corporate name. Just as here, the insurance policy, yeah, it's a legal document. Being an insurer is a legal relationship. Those relationships have legal consequences and they are the factual reason why they are legal elements of C&A's liability. So that's why, you know, in Pfizer, of course, the court could have ruled that the fact that most, you know, corporations let their subsidiaries use their brand name, it's actually a common branding strategy out there in the court. The court could have said, well, because it's a common strategy out there, it's common conduct arising out of the parent-subsidiary relationship, that therefore it's within the scope of the injunction. Isn't the claim here by the Continental that it's actually inherent in its insurance services. That seems like what we were referring to in footnote eight of the Grace opinion. You're suggesting that there is necessarily legal relevance if you've got, you know, a duty that is deriving from the provision of insurance that by its very nature includes routine inspection practices. Yeah. Part of this, you're, is part of this, you know, dependent on a claim alleging something different than routine inspection services. That's it precisely, Your Honor. Thank you. That is exactly the distinction. It's that, and the Montana Supreme Court made it very easy because they said, if you just, if an insurer just does what insurers do, there's no claim. So our claim necessarily under Montana law must include, and it does include, the allegation that what they did was of a completely different degree, depth, and character from from what an insurer would normally do. And under those circumstances, the only relationship between provision of insurance and what CNA did here is the factual, that factual relationship that the whole reason that they got involved with Grace's facility to begin with was because of the insurance relationship. And as I said, that factual relevance is crystal clear under Quigley and under this court's 2018 decision. Yeah, how do we make, is that a determination we can just, you know, make as a matter of law, just drawing a line? Because Mr. McGuess and Anneke there are saying that what was, what is alleged here as actionable conduct is incidental to the provision of insurance. And that's the way the industry works. And your ability to proceed, you're suggesting, may hinge on it being something far more than incidental. How do we make that determination with what we have before us? Well, the answer, I mean, hypothetically, in some future case, this could conceivably be a difficult line drawing exercise. But as I said, the Montana Supreme Court has made it easy because what they will do is they'll knock out our claim. If they conclude that all that we're that all that we're alleging is the kinds of things that insurers customarily do, they've already said that does not rise to a claim under Montana law. They did, in the case of MCC, and we make similar allegations about CNA, they've said, yeah, if you do that kind of stuff, then you're, you know, that's not insurance. That's industrial hygiene. That's a separate undertaking under 324A and you're liable. So, so in this case, you can simply affirm and let those cases go forward, knowing that you know, knowing that under Montana law, there is no danger of this slipping over into that, you know, into that delicate area. If it comes down to a future case, Your Honor, what this court would need to do is to look at the elements of whatever the state law that was an issue. And if that state, you know, had a law that said workers' compensation insurers who go on the site and make you know, safety recommendations or whatever can be liable if those recommendations injure a third party, I think you will look at that law and you'd say, well, that's provision of insurance is a legal element of the law as I just described it. And, but you just have to take it on a case by case basis, depending on what the elements of state law are. It's a very important aspect of this decision, the 2018 decision, is that it respects federalism. It lets, it says, the starting point is, what is it that the state says you can be liable for? And only if what a state says you can be liable for includes provision of insurance as an element, does this court need to get involved in order to protect the federal interest? So, so the legal relevance standard, as I said, is a matter of legal relevance means just what I said, namely that the provision of insurance would have to be an element of the claim. I realize that legal relevance and Mr. Burgess' argument in his brief, that legal relevance is a different term from legal elements. So, it does raise the question, is there some daylight, if you will, between between legal relevance and legal elements? And the answer to that, Your Honor, is that in the Pfizer, I'm sorry, the Quigley decision itself, what legal relevance meant was that the statutory relationship was not a legal element. So, and this court did not, in its 2018 decision, suggest it was doing anything other than importing legal relevance from Quigley. Now, I think that what the Second Circuit was doing when it used the term legal relevance, rather than just saying legal elements, was, it was keeping an eye open for the fact that in some future case, it's possible that the provision of insurance could be, for example, an element of the defense to a claim. Consider, for example, if there were a state law that imposed certain presumptions on an insurer. And let's say those presumptions were relied upon by the plaintiffs, you know, maybe that would be an instance where legal relevance, where it would be legally relevant because it was relevant to a defense, not to a, you know, or to the proof of the claim, but not to the, not an element of the claim itself. Or suppose that a state said this, there's a three year statute of limitations for this for this cause of action applicable to an insurer, but only two years for everybody else. A claim that was brought between year two and year three, there would at least be an issue of whether maybe provision of insurance was legally relevant in that situation. Again, even though, even though it wasn't an element of the claim. So it's very easy to explain why one would use a term like legally relevant, rather than just saying it has to be an element of the claim. But none of that is the outcome here. I'm sorry, go ahead. Um, should we, should we be concerned if we were to affirm the consequences for the funding of future trusts? Not at all. While there was provision here for, you know, indemnity with, you know, this in mind, given the uncertainty of the law, if there were, if there were certainty that insurers could be hauled into state court based on allegations of undertakings in excess of what would be incidental to insurance, what consequence is that going to have for future investors plans? Yeah, no, that's a very, that's a very important question. I would, I do want to point out that as to the CNA settlement, most of it was in hard money dollars, which could not be returned to CNA under any circumstances, and presumably that was the liability that CNA had under its insurance policies. So then they added on this indemnity and a possible interpretation of that is that you're never going to see it again, because the whole purpose of the indemnity was to create jurisdictions and create issues that would, that would be of concern to this court because they knew that this matter was going to be, was going to be litigated. And once it is clear that claims, that claims under 324A can simply proceed in state court, insurers aren't going to bother with this. And what will happen is that future settlements will just do, here's $70 million, which CNA paid, you know, in this case, here's $70 million to settle our insurance liability, and we're not purporting to settle anything else because everybody acknowledges that nothing else can be settled. And the financial result to bankruptcy estates will be exactly the same, and it will be exactly what it should be, which is that the bankruptcy estate can settle what it owns, which is the insurance policy. You can't take causes of action for the insurers, in this case, could even be intentional misconduct, can't just take those away from this small group of claimants who were the victims of that and just throw it into the bankruptcy estate because it doesn't belong to the bankruptcy estate. So, so this will have, in terms of economic impact, it will have no economic impact on future cases, and it hasn't had any economic impact on past cases. Insurers have written very big checks to to bankruptcy estates to settle their insurance policy related asbestos liability, and because they were, they had very good economic reasons to do so. But I mean, in terms of dollars and cents, is there a big difference that these are tort law theories to make people whole? Is there a difference in the bottom line recovery that a plaintiff can get directly against an asbestos manufacturer and then, you know, vicariously or, you know, through direct action against the insurer versus against the insurer on a failure to warn or a 324A theory? It seems to me that the exposure, if the goal, the metric of damages, is to make someone whole, both of those theories lead to the making of whole, and if they do, and now the answer is, well, insurers like CNA buy themselves out of one of those glasses of soot, but they don't buy themselves out of the other. When the exposure is at least order of the magnitude similar, why wouldn't that have an effect? Well, because, Your Honor, it's, there are two separate, think of this as being two separate pools of dollars, okay? Insurance policies are all written with limits. So CNA's limits here, I'm just going to make up the number, I'm sorry, I don't remember what it was, but, and of course, CNA was not, they weren't a primary insurer, they had some, you know, they had some reinsurance limits and so on. So I'm just going to make up a number. Okay, so let's say CNA's liability under its insurance policies was potentially $100 million, but it has defenses of, you know, that it thinks would get it out of a big portion of that, and so they end up settling for 70. All right, and then there's another pool of dollars, which is CNA's own net worth. It's the corporate dollars that it just has, not to pay under insurance policies, but to pay for its own misconduct. And for all we know, you know, maybe CNA has its own insurance, you know, to insure against that kind of thing, but the point is that those are two separate pools of money, and the fact that you, the fact that we, to achieve recovery for the Montana plaintiffs, the fact that we get it from, you know, CNA's pocketbook, as opposed to their insurance liability, costs nothing to the bankruptcy estate. The bankruptcy estate still gets the $70 million or whatever the figure would be in any particular instance representing a fair settlement of CNA's insurance liability. But I guess my thought is, why would they make that same settlement if their total exposure under 324A mirrors their exposure as insurer? And again, there are limits to insurance coverage, but if it's close or greater, then why are you buying yourself out of the similar or lesser? What incentive do you have to buy yourself out of the similar or lesser, assuming that there's also bars on double recovery, right? It seems like now there's just two ways to get this. So why, like, it strikes me as, yes, there may be an incentive to buy yourself out of one, but that's not a big incentive as I see it. You want to buy yourself out of all. So if you can get the same amount, I mean, if you aren't buying yourself out of all exposure or all liability, that, it just, in my head, it's a matter of intuition, suggests that you won't pay as much if you aren't getting a stronger release. Well, first of all, Your Honor, it is probably true. I mean, let's say that CNA, you know, again, using, let's say it's got $100 million of insurance liability, $50 million of liability to our, you know, to the Montana plaintiffs. It might be true that they write a check for $150 million in the bankruptcy estate if they could get, if the bankruptcy estate could basically steal our claims and then give a release of them. And in fact, if the bankruptcy court could say, and not only are we releasing you from claims having to do with Gray's asbestos, why don't we release you with claims for everybody else's asbestos? Maybe they'd pay a billion dollars, but that doesn't mean, you know, that doesn't mean that that's either what the statutory scheme envisions or what would be, you know, what would be fair and equitable in any kind of policy sense. May I ask, Mr. Cohen, is the difference that via a bankruptcy, you pretty much try to settle the case in this bankruptcy judge versus the state court system? In the state court system, what you're talking about is jury trials. And I would think, in your circumstance, economically speaking, you stand a better chance before a jury in terms of relief for your client than you would in a bankruptcy court. Is that one reason why you're advocating so much for having these matters resolved in the state court system? No, no, no, Your Honor. It's really not that at all. The problem is that the debtor is insolvent. Say again, please. The debtor is insolvent. Or I'm sorry, the debtor wasn't insolvent at the time. It was, but it has a pool of money. If I'm not mistaken, it's quite significant. It's $75 million or something like that. Well, the debtor, yeah. Well, and there's insurance costs. I mean, there are several billion dollars in claims. Yeah, and CNN is covering some, et cetera. But go ahead. What is the major difference, I mean, from an economical standpoint? The major difference is that we get only fractional dollars from the bankruptcy estate because the bankruptcy estate is not paying claims, it's paying them at cents on the dollar. And then there are also various kind of provisions of the asbestos trust instrument, which also effectively limit recoveries so that the claim there would not be as great as the claim that we would have in state court. It doesn't so much matter. It's not so much jury versus non-jury as just the fact that that the terms of the trust are so arranged that they won't pay for our full damages. Right. So, in any case, economically speaking, you would be much better in the state court system. We would be much better in the state court, Your Honor. Yes. And so that encourages pioneering of state law causes of action that would get you out of the channeling injunction. Your Honor, absolutely. Lawyers, you know, lawyers will always try to do the best for their clients. But $100 cents versus $5 cents, that's a big difference. If you go back to them, even to the Second Circuit decision in Manville, okay, this goes to my federalism point again. The court in Manville observed that there are all sorts of claims that lawyers are asserting out there in state court against Manville's insurers. And those claims, they're going to be permitted to assert those claims in state court. And it observed, by the way, that no state had, the more exotic claims, no state had ever held that those were basis for liability. But nevertheless, as a matter of federalism, really, it's the states that determine what people are liable for. And if a state determines that under these five elements, an insurer can be liable, there's no interest in the bankruptcy system in preventing that from happening. So the only interest in the bankruptcy system is to make sure that when a check gets written to settle the insurance policy, that check goes to the debtor's estate and is used to pay claims. Your Honor, so what you're seeking is that we sort of free you from the channeling injunction requirement. I would like to throw that at somebody, but I can't. So what you're seeking essentially is to get out of the channeling injunction requirement for some relief and to go into the state court system. Yes, Your Honor. We are saying that our claims entitle us to, are the nature of that. Why? They're not within the scope of that channeling injunction. What is, could you clarify that a little bit? You say you're entitled to it. As opposed to being directed to present your claims via bankruptcy. You're entitled to go to the state court system. Well, Your Honor. Well, first of all, we were entitled to assert claims against the asbestos trust. So we have that entitlement anyway. So the question is, you know, just as, by the way, it's typical in a bankruptcy case that if somebody has a claim based on grades of asbestos, they may, our clients don't, but other people may have claims against manvils, bankruptcy of state for manvils asbestos. And so everybody has multiple sort of paths of recovery, if you will. And so the only issue here is whether our alternative pathway to recovery is one that gets enjoined by the channeling injunction or does not. Here we submit that the reason that it does not get enjoined by the channeling injunction is that it doesn't meet, that our claims don't meet either that's derivative law requirement that we've been talking about, or the statutory relationship requirement. Unless our claims meet both of those requirements, which are tightly drawn under section 524 G4 and interpreted by this court in the 2018 decision, then a channeling injunction may not under the statute bar our claims. So that's what we're saying. Great. We've gone far over time for both counsel, but Mr. Vergas, you can certainly have your time for rebuttal and please wait. Do concerns of federalism mandate affirmance here? Sure, Your Honor. I think they do not. I'm happy to get to that. There are three points I'd like to, three issues I'd like to address on rebuttal dealing with derivative liability, dealing with statutory relationship, and then the last on the incentives. I think the fundamental problem with my friend, Mr. Cohn's argument is that it just makes nonsense of how the 2018 decision, or at least makes it a very strange exercise. His submission, and he reiterated, is that effectively the only kinds of claims that you're going to be able to seek against an insurer, by reason of its provision of insurance, will be the claims, the direct actions for insurance proceeds. His response to that is that, well, you could imagine other kinds of claims based on its corporate relationship or because it has another veil-piercing theory, but having two responses to that. One, that would no longer be arising by reason of the provision of insurance. So it's non-responsive to say, well, if you had a different theory of liability, maybe you could go against an insurer. That was not the theory that was at issue in the 2018 appeal. So it's not just that there's a vanishingly small possibility that in the real world, you could come up with other things. None of the vanishingly small possibilities were alleged. It was not presented by the Montana plaintiffs in the first case. It's not the predicate for their theory. So if the notion is that if you're seeking a claim against an insurer, and the question is, can they be enjoined by reason of their provision of insurance? Their answer is a categorical no. If you're seeking anything beyond the insurance proceeds, it is not something that can be And I think that's the way that the court addressed it is what Judge Phipps was discussing earlier, that it refers more broadly than being held liable for the liability of the debtor, but reaches to the conduct of the debtor. And I understand Mr. Cohn's argue that, well, it must be liability conferring conduct. But I just don't see where that restriction comes into the statute. I think it's very reminiscent of their argument the first time where the court said, Look, this is broad language that is referring generally to being held, not just directly liable, but indirectly liable for the claims against conduct of or demands of the debtor. And we see no basis in that statute to restrict it to just claims for insurance proceeds, just the direct action for proceeds. Why doesn't it make sense when we look at the language and apply traditional canons of statutory interpretation, the other terms, demands and claims do relate to liability. Why shouldn't the conduct that gives rise to liability be the meaning that we ascribe to that term, especially if you think of a 524 G trust as dealing with the liability of the debtor. And so you're allowing for this, you know, liability of third parties in some cases to be brought in, but it's got to be predicated on the liability of the debtor. Don't we have to read that into the term conduct? I don't think so. I mean, this is a list of three terms. It's not so you have a list of seven and you would say, well, let's find six have this common denominator and the seventh one doesn't. So we're going to read it more broadly. I think they are independent terms and conduct has its independent reach and it is going to, it can encompass situations in which the debtor itself wouldn't necessarily be liable. Certainly that includes the immunity situation, but I don't see any basis in the statutory text to restrict it that way. And again, I don't think this is a matter of first impression for the court, because it is that specific statutory language on which the court relied in the decision to say, no, we are not going to say that these claims are limited to direct action seeking insurance proceeds. We don't think the direct liability and the being held directly liable does that. And beyond that, it has an indirect being held indirectly liable for the conduct of the claims against the debtor. So at the very least, that doesn't have the restriction. And that's what the court held. I don't think that that is open for the court to revisit. So can I just follow up. I mean, I'm trying to I'm trying to get as tight as I can with the choices, right, like surely we have to make a choice. And so, as I understand it, on the one hand, we can read this kind of how much the interplay between conduct and liability. And on the one hand, I see the choice being conduct that has to be proven for liability. I don't think that's your position. Yeah, I think that's your friend's position. But then I think that your position is, no, it doesn't have to be conduct that has to be proven for liability. It just has to be conduct that caused the harm that results in the liability. Have I captured your position correctly. I think that it causes the harm, but I also think that it's significant that it is a part of the basis for our week our alleged legal duty here and I think one way to maybe capture the distinction between our position and my friend's position is They say, because you can imagine instances of 324 a liability that would not involve wrongdoing by grace and necessarily follows that the claim can't be driven. You could have the earthquake example or It being blown on our position is that, look, you are applying the state law you look to what the state law requires, but you have to accept the actual claims. Being presented. And when you look for to the complaints, for example, it refers repeatedly to graces wrongdoing and it's unreasonable conduct and it's violation. Of state law, which it notes is responsible for the injuries. It does that in various claims that are asserted against the state of Montana and then there's a Matter of historical fact that grace was the source of this race was subject to criminal prosecution, with respect to this. The, the, the state court Montana Supreme Court says there's no disputed fact that the direct cause of this. These injuries was great. So I think that the nub of the dispute is that we think that matters that the fact that in these Circumstances being alleged in the case that the plaintiffs are trying to present Graces conduct totally baked into it and it's going to be part of why we're they're seeking to hold us liable under state law, the fact that you could imagine alternative worlds in which we might be liable under the same Legal Theory where grace was not implicated. We don't think should be what That did not do not have that feature that are instances in which you could you could have the secondary party have engaged, you know, be liable or have engaged in wrongdoing, but it's not an element of those Torts for that to be so. So I think that is the key distinction between our position and my friend's position. They think it is purely Legal in that you only look to the elements of the state claim. We think you have to look to the elements of state claim that's certainly what the court. Instructed but you you map that on onto that. What actually is the nature of their actions are they seeking to hold you indirectly viable for conduct of the debtor, because what gives rise to your potential claim under the state law is the debtors risk creating conduct. Turning to, I think, in terms of statutory relationship, a couple more minutes. Yeah, I know. I understand. It's been a long day for all of us. I think, you know, there again, I think that the Montana plaintiffs are just not If we establish that, in fact, it is relevant to the legal duty under state law, then what we were describing as a legal consequence. I assure you, we were not arguing for a legal elements. Test and saying that, you know, providing insurance had to be an element of the claim. We were arguing exactly what we're arguing here that these services are things that are part and parcel of the provision of insurance and what distinguishes that from a case like quickly where it really is just incidental fact it is the The corporate parent that was not alleged to be the basis for why a duty was acquired that I, it was actually specifically Disavowed that there was any legal connection in that case here. The predicate for our duty is our undertaking of insurance services and Mr cone suggest that, well, we are going beyond what are real insurance services. I don't think that is fair accurate. I don't think as your honor just cross indicated it creates a very difficult line drawing problem and at a minimum, what we have here are services that you can look at what's alleged Paragraphs 161 and 164 the complainers essentially the entire allegations about what we did. Those are things that as we've explained as our Mickey explained a quintessential search insurance services. They have the court recognized in the Opinion their services that were we were allowed to engage in by virtue of our insurance contracts in the court specifically noted. And the reason why Claims based on these policies fall within the scope potentially fall within the scope of the injunction in the first place is because they are predicated on The right we have under the contract to engage in inspections and make boss control reports. I also don't think it's accurate that the Montana Supreme Court decision said that what was at issue there were non insurance services. What it did say is that You know, an insurer routinely engaged in doing the normal kinds of insurance services is not going to generally be liable under 324 I don't think it follows from that, that it was indicating that, well, what is here are non insurance services. No, there was it falls within the scope of what counts as insurance, but the key difference for why there was a potential duty there is that Grace had had seeded the ground and dealing with medical monitoring, something that hasn't been alleged with respect to us, but more More fundamentally, I just don't think it is right to say whether the there is a viable state law claim is the should be the test of whether it's something can be channeled under 524 G. I actually understand, Mr. Cone to agree with that, at least on the flip side that, you know, there could be claims that are non meritorious that has Or have no basis in existing state law is the Second Circuit suggested a man built, but we're not going to, that's not going to be a reason we're going to enjoin it. We're not going to be doing that. We're not gonna be making that judgment about is a cognizable state law claim to determine whether 524 G is The same thing is true here, the possibility that there might be a viable state law claim doesn't mean that the channeling injunction. Shouldn't apply and as your honors federalism question. I think it would, it would be a real federalism problem for this court to To make its 524 G inquiry. It's a termination of federal law turn on its evaluation. And we have sometimes you might have it from the state court. Sometimes you might not about whether this is a claim could proceed in state court. That's, that's just not the nature of the inquiry. But, but I mean, I mean, on the flip side, there's a big, big, big federalism concern if the channeling injunction basically prevents plaintiffs from bringing their cases against CNA in state court based on an independent duty that That CNA has and is alleged to breach. You can basically say, hey, wait, 524 G would be a complete and total game changer then Because it would basically take entire classes of claims and plaintiffs lawyers, as your friend admits, might want to be creative as to what that class constitutes, but we just say, be as creative as you want. No recourse in state court anymore. We hope there's nothing that trust fund that you get more than, you know, seven cent dollars. And so, I mean, what that would mean is that 524 G would have a huge, huge, huge impact in terms of state law causes of action or potential impact and maybe that's its design. Maybe that's its purpose. Maybe that's why Congress did it after John Manville, but I don't think that that impact should be minimized. If I misassess that impact. I agree there's an impact, but bankruptcy channeling injunctions have that nature that they're going to block some claims that could otherwise proceed in state court and given the unique nature of asbestos liability. And this maybe takes us to the issue of incentives. It is very important and Congress wanted to in The Johns Manville bankruptcy judge originally wanted to be drafting a very broad channeling injunction that Congress subsequently codified To bring all these claims into bankruptcy. This, I think, goes to your questions, Judge Fuentes. The idea is that you want these these claims is things that are related to liability based on the debtor based on its conduct. Brought into bankruptcy. So all claimants have an equal shot. The point is that asbestos liability is unique in that Because the harms are often latent and people don't discover them until later. You're going to run out of money, the debtor runs out of money and people that come along with claims later are out of luck. And the way the major innovation with Johns Manville and 524 G to counteract that is to create these trusts. But as the, the trustee explained in its meekest brief, these trusts are just not going to work. Unless you have a significant incentive for insurers to participate and Mr. Cohn argued that, well, insurers are still going to Settle up to their policy proceeds liability and here what was thrown in with something on top of that. There's no support in the record for the idea that The indemnity obligation, the amount of indemnity that CNA obtained as part of the settlement was related to the number. It thought it was potentially liable under For the policy processes. That's just, that's not supported. What CNA did is it and if this is Established in the Caswell declaration. It really wanted closure. It wanted to be able to end these cases. And that was what because it realized what, you know, what are you buying If instead of trying to fight out these insurance cases and we had significant defendants to them. And as Mr. Cohn alluded to a lot of them were excess policy. So it's going to be years before they would potentially be reached. If, if we're not going to get much, much relief. If we're not going to get meaningful closure. Why not continue to fight that out. And see what we can do to minimize our exposure in that sense. But we wanted to get to bring this to close. But because we knew that the Libby claims out there and we recognize that they were going to bring them we And we thought we had strong arguments that they should be subject to the channeling injunction. We recognize it was going to be a question of first impression. What one quick question is, if Mr. Cohn wants to take this case in the state court, as he suggested he would like that. Does he have the right to do that or is he prevented from doing that based on the channeling injunction. The channeling injunction operates to prevent bringing those state tort claims, of course, to the extent that representing workers and might have workers compensation claims. We've made clear this was established in the first case, those were not going to be subject to the channeling injunction. So those potential things could be Mr. Cohen is just expressing a preference, I suppose. He's expressing a preference and it's an understandable preference because he's correct that the The potential recovery and bankruptcy will be lower, but that's by design, because the way this system is intended to operate is to create a pot of money. And treat everyone equally. You submit a claim and everyone has to take a haircut, but everyone gets compensated as opposed to a system where people are trying to jump in line and tort and first in is going to be the first step. Mr. Vergas, looking at the complaint at those paragraphs. They don't read as premised on wrongdoing by grace. They seem to be CNA being negligent in the undertaking to provide services. This is a duty of care to Libby workers and families and community. With activities that are listed, they don't sound like the provision of insurance. You know, testing and monitoring effectiveness of death control, obtaining medical information on incidents of insurance and death. Is there Is this in the complaint and where we should be looking to To conclude that it really is premised on wrongdoing of grace. So two responses to that. First, when I was referencing those paragraphs. Those are about what the nature of CNA is undertaking is And the extent to which those claims are going beyond the provision of insurance. We think they certainly are not and they fall within the heartland of what insurers routinely do and what was authorized by our contract. They all they all refer to Our alleged failure to make certain recommendations or to give reports. There's nothing affirmative that we Take on in terms of like creating a new risk. So that's why I was referring to those paragraphs elsewhere in the complaint. And there are several, but I think one that's particularly Compelling disregard on page 134 of the These those were that was in the cause of action against the state of Montana, but all those allegations were incorporated by reference in the claims against CNA as well. If the court has no further questions. We appreciate your indulgence. Well, I, it's been a long day for you as well. And that we have gone as long as really a tribute to the excellence of your advocacy for on both sides. You've been very helpful to the court and it's a pleasure to have quality that before us. So thank you and We will take the case under advisement.